IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 18, 2004

## STATE OF TENNESSEE v. TERRY LYNN BYINGTON

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S46479     Phyllis H. Miller, Judge**

---

**No. E2003-02316-CCA-R3-CD - Filed July 19, 2004**

---

The defendant, Terry Lynn Byington, was convicted of DUI, fourth offense, and sentenced as a Range II, multiple offender to three years in the Department of Correction, with 150 days to be served day-for-day.  On appeal, the defendant argues that (1) the evidence was insufficient to support his conviction; (2) his sentence is excessive; (3) the trial court erred in allowing the State to introduce evidence of a prior conviction which was more than ten years old; and (4) the trial judge erred in not recusing herself.  After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOE G. RILEY, J., joined.

George Todd East, Kingsport, Tennessee, for the appellant, Terry Lynn Byington.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and William B. Harper, II, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

Officer Jason McClain of the Kingsport Police Department testified that on December 20, 2001, at approximately 1:00 a.m., he observed the defendant leaving a nightclub in Kingsport. McClain followed the defendant as he traveled down Sullivan Street and observed him cross over the center line several times.  He stopped the defendant after following him about a half of a mile. As he approached the defendant's vehicle on the driver's side,  he smelled a strong odor of alcohol coming from the vehicle and noticed the defendant's eyes were bloodshot.  McClain asked the defendant to exit his vehicle and walk to the area behind his vehicle and in front of the patrol car. McClain smelled a strong odor of alcohol about the defendant's person and noticed that his speech

was slurred. The defendant admitted that he drank three beers while at the nightclub, without specifying the time period within which he consumed them.

Officer McClain then asked the defendant to perform three field sobriety tests. As to the one-legged stand test, McClain said the defendant "did not keep his arms down to his side, he had his arms out to the side, swaying to keep his balance and he put his foot down several times." During the ABC's test, the defendant jumbled his letters and said, "I'm not drunk, I'm not drunk, I'm just going to Chuck's with my girlfriend." The witness could not recall whether the defendant ever completed that test. As to the finger count test, the defendant "didn't touch the correct fingers to his thumbs."

Officer McClain testified that he had made seven or eight hundred DUI arrests during his nine-year career, and, based on this experience and his observations of the defendant that morning, he believed the defendant was unable to safely operate a motor vehicle. He arrested the defendant and transported him to the Kingsport City Jail where he explained the implied consent law and the fact that he could not force him to take a breathalyzer test. The defendant refused to take a breath test and refused to sign the implied consent form. McClain said he could not remember if the defendant had said that he went to the nightclub to pick up his passenger, who was arrested for public drunkenness.

The forty-five-year-old defendant testified that he was employed as a sheet metal mechanic and was a divorced father of three. He said that on December 20, 2001, around 8:00 p.m., he drove his friend, Nancy Doveck, to "Five Points to the Pub." After dropping her off at the pub, the defendant returned home and went to bed between 10:00 and 10:30 p.m. Around 12:00 a.m., Ms. Doveck called him to come pick her up at the pub. He arrived there around 12:30 a.m. As he and Ms. Doveck were leaving, he noticed a police cruiser sitting to his left. The defendant backed out of the parking lot and headed toward Chuck's Drive-In. The defendant said that he may have crossed the yellow line while driving because he was watching the police officer who was following him and because Sullivan Street was not in good shape. After seeing the officer's blue lights, the defendant pulled into the parking lot of a furniture outlet. Because his window was wired shut, he opened the door to talk to the officer. The officer asked him how much he had had to drink, and the defendant replied, "[N]othing." The officer told him that some chewing gum was stuck on his teeth. The defendant pulled out his partial denture to show the courtroom where the gum had stuck to his tooth. The defendant said the partial caused him to "whistle a lot" when he talked but denied that his speech had been slurred the morning of his arrest.

The defendant testified that he could not perform the one-legged stand test because of problems with his back and the nerves in his left leg, explaining that he had three blown discs and a severed nerve on his left side. As to the ABC's test, the defendant explained that he cannot say the alphabet without starting at the beginning.

The defendant said he refused to take a breathalyzer test without taking a blood test first because "I was going to jail for something I didn't, didn't do and I wanted an independent test on

it that was for sure." The defendant denied that he had been under the influence of any intoxicants or alcohol in the early morning hours of December 20, 2001.

## ANALYSIS

### I. Waiver

The State argues that the defendant waived consideration of his issues on appeal because he untimely filed his motion for a new trial and his notice of appeal.[1] Tennessee Rule of Criminal Procedure 33(b) provides that "a motion for new trial shall be made in writing, or if made orally in open court shall be reduced to writing within thirty days of the date the order of sentence is entered." This provision is mandatory, and the time for filing cannot be extended. Tenn. R. Crim. P. 45(b); see also State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997). The thirty-day provision is jurisdictional, and an untimely motion is a nullity. State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). Failure to file a written motion for new trial within the required thirty days not only results in the defendant losing the right to have a hearing on the motion, but it also deprives the defendant of the opportunity to argue on appeal any issues that were or should have been presented in the motion for new trial. Martin, 940 S.W.2d at 569. The only issues available to a defendant who untimely files are sufficiency of the evidence and sentencing.

In the present case, the judgment was filed on June 27, 2003. The defendant filed his motion for a new trial on August 7, 2003, which was beyond the thirty-day requirement. As a result, the defendant can only raise issues which are related to sufficiency of the evidence or sentencing. The defendant, therefore, has waived the issues of whether the trial court committed reversible error by allowing the State to introduce evidence of the defendant's conviction for perjury that was more than ten years old and by denying his motion for the trial judge to recuse herself due to her having previously prosecuted the defendant in another case. We will consider the remaining issues of the sufficiency of the evidence and the setting of the defendant's sentence.

### II. Sufficiency of the Evidence

The defendant argues that the evidence was insufficient to support his conviction for DUI, fourth offense. In considering this issue, we apply the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600,

---

[1]By order of this court on June 4, 2004, the defendant's motion to waive the timely filing of his notice of appeal was granted.

604 (Tenn. Crim. App. 1992).  All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact.  See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).  "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."  State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).  Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation.  The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand.  Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses.  In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).  A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient.  See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Officer McClain testified that he stopped the defendant's vehicle after observing it cross over the center line several times.  He testified that there was a strong odor of alcohol on the defendant, his speech was slurred, and his eyes were bloodshot.  The defendant performed poorly on the field sobriety tests and, in the opinion of Officer McClain who previously had made seven to eight hundred DUI arrests, was unable to safely operate a motor vehicle.  As was its right, the jury credited this testimony rather than that of the defendant.  Accordingly, we conclude that the evidence was sufficient to sustain the defendant's conviction.

## III.  Sentencing

The defendant argues that his sentence is excessive because the trial court misapplied enhancement factors and failed to apply mitigating factors and that the trial court erred in denying alternative sentencing or probation.

### A.  Standard of Review

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct."  Tenn. Code Ann. § 40-35-401(d).  This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  The presumption does not apply to the legal conclusions reached

by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous.

## B. Application of Enhancement and Mitigating Factors

In sentencing the defendant, the trial court first applied enhancement factor (2), the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(2). According to the defendant's presentence report, his prior criminal record includes two DUI convictions in 1979, DUI in 1986, driving on a revoked license and DUI in 1989, perjury in 1990, driving on a revoked license, second offense, in 1992, leaving the scene of an accident in 1992, reckless driving in 1992, driving on a revoked license in 1993, DUI in 1997, and DUI in 1998. In applying enhancement factor (2), the court stated:

> The DUI convictions made him a 4th offender if I go back to the ones in, let's see, '97, '89 and '98. Okay, but he has other convictions besides those. I really won't even consider the ones that made him a 4th offender, but I give enhancement factor number [two] great weight and of course you have the conviction in December 2002.

The defendant has a lengthy record of offenses similar to those which resulted in the present appeal. We cannot conclude that the trial court erred in applying this factor or in giving it great weight. As to application of this factor, we note that applying the holding of Blakely v. Washington, __ U.S. __, 124 S. Ct. 2531 (June 24, 2004), which was decided after the oral arguments in this matter, would not alter the power of the trial court to utilize the defendant's prior convictions in increasing his sentence from the minimum. See id., __ U.S. at __, 124 S. Ct. at 2536 (citing

-5-

Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)) (prior conviction may be utilized by trial court for sentence enhancement without submission to a jury).

The court also applied enhancement factor (11), the defendant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114(11). The court reasoned that since the defendant "crossed the center line several times on Sullivan Street" and "especially since he had a passenger in the car and was driving on a public road obviously intoxicated," this factor applied. The State did not present proof that the defendant endangered other motorists or his passenger by nearly striking other vehicles, or even that other vehicles were on the road he was traveling. Given the opinion of the United States Supreme Court in Blakely, it is questionable whether this factor may be utilized in setting the sentence in the present appeal. However, given the substantial weight afforded factor (2), the defendant's prior convictions, the inapplicability of this factor would not alter the defendant's sentence.

The defendant argues that mitigating factors existed which should have been applied by the court, including the presence of close family members and a minor son living in the area, his work history as a sheet metal mechanic, and his veteran status. The defendant argues that his "social history and current social context" must be considered as well. Finally, the defendant argues that he has always complied with probation orders and "previously responded well to treatment with Ant[a]buse." The trial court addressed the work history factor:

> Excellent work history, he does work, according to his testimony at trial, but I don't think I can find he has an excellent work history. . . . [A] fax was received from CHC Mechanical stating the defendant worked as a temporary employee for a brief period from April 10th 2000 to June 8th, 2001. . . . Sheet metal mechanic, would not rehire due to excessive absenteeism.

The court also addressed his military record: "Honorable discharge, no. Discharged due to misconduct, frequent involvement of a dis-credible nature with civil or military authorities. So that doesn't apply." The trial court concluded, "Really, there's nothing, no mitigation to reduce his sentence." It is apparent that the court considered whether several mitigating factors were applicable but determined they were not. We cannot conclude that the trial court erred in this decision or, given the strong weight afforded enhancement factor (2), the decision to sentence him to three years as a Range II, multiple offender.

## C. Denial of Alternative Sentencing

The defendant argues that the court erred in not granting alternative sentencing. The Tennessee Criminal Sentencing Reform Act of 1989, enacted to "promote justice," Tenn. Code Ann. § 40-35-102, provides that the sentence imposed upon an offender should be the "least severe measure necessary to achieve the purposes for which the sentence is imposed," Tenn. Code Ann. § 40-35-103(4). Thus, trial judges are "encouraged" to use "alternatives to incarceration that include

requirements of reparation, victim compensation and/or community service." Tenn. Code Ann. § 40-35-103(6). An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).

Evidence sufficient to overcome the presumption in favor of alternative sentencing includes evidence showing that "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct," "[c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses," or "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Tenn. Code Ann. § 40-35-103(1)(A)-(C); see Ashby, 823 S.W.2d at 169.

However, we note in this case that the defendant is not presumed to be a favorable candidate for alternative sentencing. In order to be presumed to be a favorable candidate for alternative sentencing, one must be an "especially mitigated or standard offender." Tenn. Code Ann. § 40-35-102(6). The defendant is a "multiple offender" and does not meet this criterion.

The trial court addressed the issue of alternative sentencing, stating, "On this case you're not presumed to be a favorable candidate for alternative sentencing." The court explained its decision:

> I find that number one, you've not established that full probation would serve the ends of justice, yourself or the community. I find that all forms of sentencing have been tried previously. You've had treatment for alcohol problems that's really not changed your life. You've had split confinement. You've had, well mainly you've had offenses that required minimum jail time, so its been basically split confinement from serving your sentences and they've not , not served to deter you from committing more crimes. I also find that . . . your crime was the result of intentional conduct. I also find that you previously engaged in criminal conduct of the same type. So alternative sentencing is denied.

Given the defendant's substantial record of convictions similar to that which resulted in the present appeal, we cannot conclude that the trial court erred in denying alternative sentencing.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE